# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **RASHEED N. SHABAZZ,** | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | |
| **vs.** | ) | **Case no. 4:05cv0507 TCM** |
| | ) | |
| **JAMES PURKETT,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Rasheed N. Shabazz ("Petitioner"), a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) for a final disposition.

## Background

Petitioner was indicted in 1998 on one count of first degree murder and one count of first degree assault. (Resp. Ex. 2 at 1.) The charges related to the death by suffocation of one-year old Hakeem Shabazz. (Id. at 5.)

Prior to Petitioner's jury trial beginning, an evidentiary hearing was held on the admissibility of statements made by Hakeem's sister, Kyna Cooper, who was four years' old when he died. See Mo.Rev.Stat. § 491.075 (governing the admissibility of hearsay statements by minors). The prosecutor stated that five witnesses would testify about statements made to them by Kyna shortly after Hakeem died. (Id. at 231.) Petitioner's counsel objected to the statements, arguing that she had not had an opportunity to interview Kyna herself because of the short notice given by the

prosecutor.  (Id. at 231-32.)  The court gave trial counsel an opportunity to object to admissibility of the statements under § 491.075; however, counsel did not object and the court ruled that Kyna's out-of-court statements were admissible.  (Id. at 270-71.)

Opening arguments were made after the jury was seated.  (Id. at 272, 275, 281.) Trial counsel emphasized the stress and pressure that Petitioner was under on the evening of Hakeem's death.  (Id. at 286.)  Counsel's strategy was to admit that Petitioner physically caused Hakeem's death, but to challenge whether he had the mental state necessary for first degree murder.  (Id. at 281, 287.)

Brandy Cooper ("Cooper"), Hakeem's mother, was the State's first witness.  (Id. at 288.)  She testified that, at the time of Hakeem's death, she and her three children – Kyna; Malik, three years' old; and Hakeem – lived with Petitioner in an apartment.  (Id. at 289-90.)  Cooper was six months' pregnant at the time.  (Id. at 290.)  Hakeem had been born prematurely and had initially suffered from infections and asthma.  (Id. at 299.)  He had recovered from these problems and was a healthy child by his first birthday.  (Id.)

On the night in question, Cooper and Petitioner started arguing.  (Id. at 291.) She wanted to go out to eat, but Petitioner did not think they could afford to.  (Id.). The argument continued for some time.  (Id. at 291-93.)  Cooper eventually started to cook "Spaghetti O's" on the stove.  (Id. at 293.)  Petitioner knocked the pot off the stove; food went on the floor and walls.  (Id. at 293, 294, 593.)

At trial, the prosecutor asked Cooper if Petitioner had a temper.  (<u>Id.</u> at 293.)
She responded, "He does."  (<u>Id.</u>)  The prosecutor next asked if she had seen
Petitioner lose his temper before.  (<u>Id.</u>)  She responded affirmatively.  (<u>Id.</u> at 294.)
The prosecutor then asked if she had seen Petitioner punch a hole in the wall, but
the court sustained an objection to the question.  (<u>Id.</u>)  When the prosecutor asked
Cooper what she thought when Petitioner knocked the food off the stove, she
responded that she thought, "I was going to get my butt whooped."  (<u>Id.</u>)  Asked
why, she explained because "that's what a lot of our arguments led up to, me
getting hit."  (<u>Id.</u>)  Petitioner's counsel did not object.  (<u>Id.</u>)

Cooper further testified that the three children were in their joint bedroom when
she and Petitioner were arguing.  (<u>Id.</u>)  After Petitioner knocked the food off the
stove, Cooper left the kitchen and went into her bedroom to diffuse the argument.
(<u>Id.</u> at 295.)  She turned on the television and dozed off.  (<u>Id.</u> at 296.)  Petitioner
entered the bedroom several times throughout the evening and sat silently in a
chair.  (<u>Id.</u>)  Cooper believed that Petitioner was still upset and wanted to continue
arguing.  (<u>Id.</u> at 296-97.)  She remained in bed.  At some point, she heard Malik
crying.  (<u>Id.</u> at 298.)  Later, Petitioner brought Kyna into the bedroom to say
goodnight and then took her back to the children's bedroom.  (<u>Id.</u> at 302.)  Cooper
heard Petitioner yell that her son was not breathing.  (<u>Id.</u> at 303.)  She went to the
children's bedroom and found Hakeem on his back with a blue face and his eyes

cracked open. (Id.) She ran to get help and call the paramedics. (Id. at 305.) Hakeem was taken to the hospital, but he did not survive. (Id.)

Detective Anna Kimble, a police detective and registered nurse, was on duty that night and met with Cooper and Petitioner at the hospital. (Id. at 380-82.) Petitioner told Kimble that he had found Hakeem unconscious on the bed and had immediately alerted his mother. (Id. at 383.) Kimble viewed Hakeem's body and noticed broken blood vessels around his eyes that were consistent with death by suffocation. (Id. at 384-85.) Further examination uncovered a rectal tear on Hakeem. (Id. at 388.) An expert testified that the tear was most likely caused by a hard object. (Id. at 414.) The injuries occurred no more than a few hours before Hakeem was taken to the hospital. (Id. at 417.)

Kimble interviewed Petitioner again at the hospital to obtain background information on Hakeem's injuries. (Id. at 382.) Petitioner told her that he had seen Hakeem laying on his brother's bed and had noticed that Hakeem was not breathing when he tried to move him to his own bed. (Id. at 383.) Kimble testified that Petitioner did not mention a fight between the two children or trying to quiet Hakeem with a pillow. (Id.)

Petitioner went from the hospital to the police station where he was separated from Cooper, given his Miranda rights,[1] and interviewed by two police detectives. (Id. at 478.) Petitioner waived his rights and made an audiotaped statement. (Id. at

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

- 4 -

481, 485.) He told the detectives about his argument with Cooper and knocking the food off the stove. (Id. at 481-82.) Sometime later, he heard the two boys crying in their bedroom. (Id.) He went to their bedroom, spanked both boys, and made them go to bed. (Id.) This did not stop Hakeem's crying, so Petitioner put a pillow over his head. (Id. at 482-83.) After some questioning, Petitioner admitted he had pressed down on the pillow, although he did so without significant force. (Id. at 483.) Petitioner also admitted that as he held the pillow, he held down Hakeem's legs to keep him from kicking his brother. (Id.) When asked about Hakeem's rectal injuries, Petitioner speculated that the tear must have occurred from Hakeem "pass[ing] gas" when the pillow was held over his head. (Id. at 484.) Petitioner told the detectives he left the bedroom after this and, when he later returned, found Hakeem was not breathing. (Id. at 510.)

The day after Hakeem's death, Dana Kloess, a supervisor with the Missouri Division of Family Services, went to a foster home to talk with four-year old Kyna. (Id. at 536-38.) Kyna told her that Hakeem had blood in his mouth and a "hole in his mouth" after her "Daddy" held a pillow over his head. (Id. at 539.) Kloess then testified:

> Kyna said that Hakeem went to sleep and that his eyes were open. And I clarified this with Kyna and when I did, she said, "I'll show you," and she climbed up on the sofa, laid down with her arms straight at her sides, her legs straight, and her eyes real wide-open with her face straight up.

(Id. at 539-40.)

Trial counsel did not object to this testimony.  (Id.)  Kyna made similar statements to another police detective; these also were admitted into evidence.  (Id. at 554.)

Petitioner testified at trial.  (Id. at 572.)  On direct examination, he was asked if he had ever hit Cooper; he replied that he had struck her on several occasions.  (Id. at 584-85.)  He was also asked if he had "ever been in trouble with the law."  (Id. at 627.)  Petitioner responded, "No, just traffic tickets."  (Id.)

Petitioner testified about what happened on the night of Hakeem's death.  (Id. at 588-620.)  Cooper refused to talk to him after their fight, so he went back into the kitchen and started smoking marijuana.  (Id. at 597-98.)  After taking several puffs, he heard his children crying, so he went to their room to investigate.  (Id. at 598.)  He discovered that the boys had been fighting, so he "popped them both in the butt" and made them get in bed.  (Id. at 599.)  This made Hakeem cry louder.  (Id.)  He turned Hakeem's "face towards the mattress and, you know, placed the pillow over the back of his head" to "muffle the cry."  (Id. at 603.)  He held Hakeem's feet to stop him from kicking as he held the pillow over his head.  (Id. at 605.)  He left the room after Hakeem "stopped" making noise.  (Id.)  Petitioner testified that Hakeem was still alive when he left the room; Petitioner heard him cry when he came back into the room a short time later.  (Id. at 606.)  Petitioner took Kyna to the kitchen to make some food for her and then took her to give Cooper a goodnight kiss.  (Id. at

610.)  He testified that after he put Kyna to bed he tried to move Hakeem and noticed he felt like "dead weight."  (Id. at 612.)

On cross-examination, the following exchange took place between Petitioner and the prosecutor:

> Q.  Now you stated, sir, that you've never been in trouble with the law?
> A.  Yes I did.
> [Trial counsel]:  I'm going to object.
> [Prosecutor]:  Would it surprise you to know this is your arrest record? . . .
> Court:  It's improper, counsel.  Put it away . . . .
> [Prosecutor]:  Your Honor –
> Court:  Put it up.
> [Prosecutor]:  [Trial counsel] asked you have you ever been in trouble in trouble with the law?
> A.  I said traffic tickets, ma'am.
> [Trial counsel]:  Your Honor, may we approach?
> Court:  All right, counsel, approach.
> [The following proceedings took place at the bench outside the hearing of the jury:]
> Court:  [Prosecutor], I don't know where that stunt came from.  It's inappropriate.  It's improper.  You move on.
> [Trial counsel]:  Your Honor, for the record, I'm going to make a motion for mistrial at this time. [The prosecutor] knows the arrests cannot be brought up.  My client never said he was arrested.
> [Prosecutor]:  Your Honor, the door was opened.
> [Trial counsel]:  I asked my client specifically.
> [Prosecutor]:  She asked him was he ever in trouble with the law.
> Court:  Counsel.
> [Prosecutor]:  That opens the door.
> [Trial counsel]:  That doesn't open the door.
> Court:  The motion for mistrial is overruled and denied.  Don't do that again.
> [Proceedings were then resumed within the hearing of the jury as follows:]
> Court:  Ladies and Gentlemen, you will disregard the last question with respect to the defendant's arrests.  Proceed.

> [Prosecutor]:  Aside from traffic, you've been in trouble with the law in other areas, haven't you?
>
> [Trial counsel]:  Again, I'm going to object, Your Honor.  It's an improper question.
>
> Court:  Sustained.  Move forward.
>
> [Prosecutor]:  Your Honor, may we approach?
>
> Court:  Move forward.
>
> [Prosecutor]:  Are you telling this jury that you've never had any problems with the police other than traffic?
>
> [Trial counsel]:  Your Honor, again, I'm going to object.  She just asked the same question.
>
> Court:  Objection is sustained . . . .  Move to a different subject matter.

(Id. at 656-58.)

After closing arguments, the jury deliberated and returned a verdict of guilty of murder in the second degree and not guilty of assault in the first degree.  (Id. at 760.)  Petitioner was sentenced to twenty-five years' imprisonment.  (Id. at 772.)

Petitioner appealed, arguing that the trial court had plainly erred when (1) overruling his motion for acquittal at the close of the evidence because the state did not carry its burden of proving he acted knowingly, and (2) permitting testimony from Cooper and Petitioner about prior physical abuse of her by him because it allowed the jury to convict him based on evidence of uncharged crimes and general bad character.  (Resp. Ex. 3 at 14, 16.)  The appellate court affirmed his conviction in a one-paragraph, per curiam opinion.  (Resp. Ex. 5.)

Petitioner next moved for post-conviction relief alleging twenty-one claims of ineffective assistance of trial counsel.  (Resp. Ex. 7 at 3-14.)  After counsel was appointed, the motion was pared down to three claims.  (Id. at 30-45.)  Specifically,

Petitioner's trial counsel failed to exercise customary skill when she (1) failed to object to the introduction of a picture of a "blunt roach"[2] as evidence; (2) "opened the door" to statements about his prior arrests by asking him if he had been in trouble with the law and had not renewed her motion for a mistrial; and (3) failed to object under Mo.Rev.Stat. § 491.075 to the introduction of Kyna's out-of-court statements. (Id.)

An evidentiary hearing was held at which Petitioner's appellate counsel testified that he had not raised the issue of Petitioner being questioned about his prior arrests because trial counsel had opened the door to the issue. (Resp. Ex. 6 at 7, 10.) Absent that consideration, he would have raised the issue because Petitioner had no prior convictions. (Id.) He had not raised the issue of the admissibility of Kyna's statements because trial counsel had objected only on grounds of notice and not on the grounds that the statute permitted the admission of a minor's hearsay statements only when the minor was the actual victim. (Id. at 8-9.) He had not raised the issue of the "blunt roach" on appeal because he did not think it would succeed. (Id. at 14.) Trial counsel was to appear, but when she had not by the time appellate counsel's testimony had concluded, the court concluded that her appearance was not necessary because the issues "appear[ed] to be legal in nature." (Id. at 18.) Petitioner was present at the hearing, but did not testify.

---

[2]Petitioner testified at trial that a "blunt" was a cigar emptied of tobacco and filled with marijuana.

The court found the first claim to be without merit based on the "numerous references" at trial to Petitioner smoking marijuana when his son died; thus, any objection would have been unavailing. (Resp. Ex. 7 at 49.) Petitioner's second claim was without merit because trial counsel had objected to the State's attempt to use Petitioner's arrest record and had moved for a mistrial. (Id. at 50.) The request was denied, and evidence of Petitioner's prior arrests was never presented to the jury. (Id.) The third claim was without merit because (a) Kyna's statements were admissible and (b) Petitioner confessed to putting a pillow over Hakeem's head. (Id. at 51.)

Petitioner appealed on the last two grounds. (Resp. Ex. 8.) His appeal was denied. (Resp. Ex. 10.) The appellate court found, in relevant part, that Petitioner's position that Kyna's hearsay statements were not admissible under § 491.075 because she was not the victim was incorrect. (Id. at 4.) Her statements were admissible under § 491.075.1.[3] (Id. at 5.) Moreover, Petitioner was not prejudiced by the admission of her statements because they were "merely cumulative to properly admitted evidence." (Id.) Addressing Petitioner's second claim of error, the appellate court noted that the trial court had rejected the prosecutor's argument that trial counsel had "opened the door" to questions about

_____

[3]Section 491.075.1 of the Missouri Revised Statutes sets forth the criteria for the admission of "a statement made by a child under the age of fourteen relating to an offense . . . performed with or on a child by another." (Alteration added.) Section 491.0751.2 sets forth the criteria for the admission of statements made by a child under the age of fourteen who is alleged to be the victim of an offense.

Petitioner's arrest record and that trial counsel's objections to those questions were sustained. (<u>Id.</u> at 7.) The trial court had instructed the prosecutor to stop questioning Petitioner about his arrest record, and no testimony by Petitioner on the subject was elicited. (<u>Id.</u>) Thus, Petitioner was not prejudiced by "the prosecutor's failed attempt to impeach him with his arrest record." (<u>Id.</u>) Nor was he prejudiced by trial counsel's failure to renew her motion for a mistrial. (<u>Id.</u> at 8.) In addition to the lack of any testimony about his arrest record, the jury was instructed to disregard the prosecutor's questions and was presumed to have followed that instruction. (<u>Id.</u>)

Petitioner now seeks federal habeas relief on eight grounds. The first four grounds are those raised in his direct and post-conviction appeals. The second four are that trial counsel was ineffective for (a) failing to interview and subpoena "certain persons" as witnesses at trial; (b) failing to file a motion to suppress audiotaped statements; (c) failing to file a motion to suppress videotaped statements; and (d) failing to object to the jury instruction on second degree murder.

Respondent argues that the first four claims are unavailing based on the state courts' decisions and the last four claims are procedurally barred and, alternatively, without merit. In reply, Petitioner reasserts the merits of his claims and additionally argues that the failure to raise his last four claims was due to

abandonment by his postconviction appellate counsel and that the failure to review them on their merits would result in a miscarriage of justice.

## Discussion

Standard of Review.  Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v.  Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)).  See also **Weaver v. Bowersox**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

The "contrary to" clause and the "unreasonable application" clause have independent meanings.  **Williams v. Taylor**, 529 U.S. 362, 405 (2000).  "[A] state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent.'" **Lockyer v.**

**Andrade**, 538 U.S. 63, 73 (2003) (quoting <u>Williams</u>, 529 U.S. at 405-06) (alterations added). "On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." **Williams**, 529 U.S. at 406 (alteration added). Thus, a state court decision that correctly identifies the controlling legal authority and, applying that authority, rejects a prisoner's claim does not fit within the "contrary to" clause although it might be contrary to a federal court's conception of how that authority ought to be applied in that particular case. **Id.**

Such a state court decision can, however, fit within the "unreasonable application" clause. **Id.** at 407-08. "[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." **Id.** at 409 (alterations added). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." **Id.** (alteration added). When making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." **Id.** at 410. "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." **Lockyer**, 538

U.S. at 75 (internal quotations omitted). Instead, "the relevant state court decision [must be] both wrong and unreasonable." **Colvin v. Taylor**, 324 F.3d 583, 587 (8th Cir. 2003) (alteration added).

And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999)) (alterations in original). Additionally, "the [state courts'] 'summary nature' of the discussion of [a] federal constitutional question does not preclude application of [§ 2254(d)'s] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (alterations added).

Ground One: Insufficient Evidence. Petitioner first argues the State's evidence was insufficient to establish his guilt of second degree murder beyond a reasonable doubt; rather, the evidence was sufficient only to establish that he acted with conscious disregard for Hakeem's safety and not that he acted knowingly.

"The Sixth Amendment requires that criminal convictions 'rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)). Consequently, a federal court's review of a state prisoner's claim that his or her conviction violated due process because there was insufficient evidence to sustain

it is limited to determining "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" **Skillicorn v. Luebbers**, 475 F.3d 965, 977 (8th Cir. 2007) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Accord **Loeblein v. Dormire**, 229 F.3d 724, 726 (8th Cir. 2000); **Armstrong v. Gammon**, 195 F.3d 441, 444 (8th Cir. 1999). In conducting this "'extremely limited'" review, a federal court "'must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and . . . must defer to that resolution[,]'" **Whitehead v. Dormire**, 340 F.3d 532, 536 (8th Cir. 2003) (quoting Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002)) (alterations added), including when "the evidence rationally supports two conflicting hypotheses[,]" **Hill v. Norris**, 96 F.3d 1085, 1088 (8th Cir. 1996) (alteration added). Moreover, "[e]ach of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence." **Id.** (alteration added). The foregoing standard is a strict one. **Id.**

Additionally, the federal court is not permitted to make its own determination as to a witness's credibility; that determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950, 954 (8th Cir. 2000). See also **Gibbs**, 192 F.3d at 1176 (rejecting challenge to sufficiency of evidence of state court conviction, and noting that habeas petitioner's arguments were directed to reliability or credibility of witnesses and not to sufficiency of evidence). Where

conflicting evidence is presented, it is presumed that the jury resolves any conflicting inferences in the prosecution's favor. **Id.**

In Missouri, a "person commits the crime of murder in the second degree if he: (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . ." Mo.Rev.Stat. § 565.021.1. A person acts "knowingly" "(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or (2) With respect to the result of his conduct when he is aware his conduct is practically certain to cause that result." Mo.Rev.Stat. § 562.016.3.

Petitioner testified in his own defense that he turned Hakeem's "face towards the mattress and . . . placed the pillow over the back of his head" to "muffle the cry." (Resp. Ex. 1 at 603). He held Hakeem's legs down to stop his kicking. (Id. at 605.) The State introduced Petitioner's admission during a police interrogation that Hakeem "was straining to breathe" while the pillow was held over his head. (Id. at 484.) The jury also heard an audio recording of a police interview with Petitioner in which he discussed holding the pillow for at least a minute and stated that he felt "I was doing something stupid." (Id. at 488; Resp. Ex. 2 at 40-59.) Finally, medical evidence presented at trial indicated that Hakeem died as a result of suffocation after "severe pressure" was applied to the back of his head. (Id. at 404, 408.)

Thus, viewed in the light most favorable to the verdict, the evidence established that Petitioner held a pillow over a one-year old child's head with "severe pressure" for over a minute while pinning the child's legs down to stop any kicking. This is sufficient evidence to allow a rational trier of fact to conclude that Petitioner was practically certain his actions would cause Hakeem's death. Because a rational trier of fact could conclude Petitioner acted knowingly when suffocating Hakeem, his due process rights were not violated when he was convicted of second degree murder. The state courts' finding that the evidence was sufficient to support that conviction is not an unreasonable application of, nor contrary to, Federal law.

Ground Two: Evidence of Uncharged Crimes. Petitioner argues his constitutional rights were violated when the State elicited evidence of past domestic violence during Brandy Cooper's testimony and his cross-examination. He contends that the jury used this evidence of uncharged crimes and general bad character to convict him. As noted above, the appellate court summarily rejected this argument.

"[I]n habeas corpus proceedings, it is not within [the federal courts'] province to 'reexamine state-court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)) (alterations added). See also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own

law is virtually unreviewable by a federal court."). Thus, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne v. Purkett**, 411 F.3d 911, 917 (8th Cir. 2005) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)) (alteration added). Accord **Rousan v. Roper**, 436 F.3d 951, 958-59 (8th Cir. 2006); **Amrine v. Bowersox**, 238 F.3d 1023, 1032-33 (8th Cir. 2001); **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998). "[T]his due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on appeal." **Griffin v. Delo**, 33 F.3d 895, 905 (8th Cir. 1994) (alteration added). Consequently, federal habeas review of an alleged due process violation in a state court conviction is narrow. **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).

Petitioner argues his rights were first violated when Brandy Cooper testified during redirect examination about Petitioner's prior angry outbursts. Trial counsel objected to the question after the prosecutor asked Cooper how many times Petitioner had punched a hole in the wall. The court overruled the objection because trial counsel had "opened the door" by asking questions about Petitioner's anger on cross-examination. Additionally, trial counsel did not object when Cooper answered another question from the prosecutor about how frequently Petitioner struck her in the six months leading up to Hakeem's death.

Petitioner argues his due process rights were next violated when he was asked on cross-examination about domestic violence. After futile attempts by the prosecutor to get Petitioner to name a definite number of times he had struck Cooper, the prosecutor asked Petitioner if his children had heard him punch holes in the wall. Trial counsel's objection was sustained. Trial counsel did not object, however, when the prosecutor questioned Petitioner about his temper. Indeed, trial counsel had asked Petitioner on direct examination if he had ever struck Cooper and Petitioner had replied that he "had put [his] hands on her" several times. (Resp. Ex. 1 at 584.)

Missouri law does not allow evidence of uncharged crimes or wrongs to show the propensity of a defendant to commit the charged crime, see **Osborne**, 411 F.3d. at 917, but does allow evidence of an uncharged crime to be admitted if it is "part of the circumstances or the sequence of events surrounding the offense charged," **State v. Morrow**, 968 S.W.2d 100, 107 (Mo. 1998) (en banc). "This standard for admissibility is the same as that used in the federal courts and is in accord with Supreme Court precedent." **Osborne**, 411 F.3d at 917.

Petitioner's defense at trial was that he had a short temper and had acted recklessly, but not knowingly. (See Resp. Ex. 1 at 742: "Our defense is that he was reckless, young,[4] stressed, overwrought, and applied the pressure that caused the death of his son."). To complete this picture of a stressed, young man, evidence of

_____

[4]Petitioner was nineteen years' old at the time.

his temper was introduced at trial. Evidence of uncharged crimes is admissible if it "completes the picture." See **Harris v. Bowersox**, 184 F.3d 744, (8th Cir. 1999) (affirming rejection of habeas claim that evidence petitioner planned to conduct drive-by shooting day of murder was of uncharged crimes and violated petitioner's due process rights; evidence was relevant to why petitioner was angry with victim – he had not quickly produced machine guns petitioner wanted to use in shooting) (citing Eighth Circuit cases affirming admission of other bad acts when necessary to explain theory of the case or complete the picture). Evidence of Petitioner's temper was also elicited by the prosecutor in response to Petitioner's theory of defense. This also is proper. See **Clark v. Groose**, 16 F.3d 960, 963 (8th Cir. 1994) (evidence of uncharged crimes introduced by prosecutor was properly admitted when in response to petitioner's theory of the case).

Moreover, even if evidence of Petitioner's temper was not necessary, Petitioner has failed to carry his "burden of showing that some prejudice 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" **Harris**, 184 F.3d at 755. There was no dispute about how Hakeem had died and who had suffocated him. The dispute, as noted in Petitioner's first ground, was whether he acted knowingly. Evidence of his temper

did not work to his actual and substantial disadvantage when the jury resolved this dispute.[5]

Additionally, the Court notes that the cumulative effect of any evidentiary errors does not support a due process claim. "[E]ach due process claim must stand or fall individually." **Id.** (alteration added).

Grounds Three and Four: Ineffective Assistance of Trial Counsel. In his third and fourth grounds, Petitioner argues that he was unconstitutionally denied the effective assistance of counsel when counsel (a) did not object to the admission of Kyna's out-of-court statements and (b) did ask him about prior trouble with the law, thereby opening the door to the prosecutor's questions about arrests.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)). "'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original).

---

[5]The Court notes that Petitioner was charged with first degree murder, but convicted of second degree murder – a crime requiring a lesser degree of culpability.

"Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (alteration added) (interim quotations omitted). "There is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish prejudice, a petitioner "must demonstrate 'a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Kellogg**, 176 F.2d at 452 (quoting McGurk v. Stenberg, 163 F.3d 470, 473 (8th Cir. 1998)). The question of prejudice from counsel's performance need not be reached, however, if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to

show prejudice.  See **Strickland**, 466 U.S. at 697; **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001); **Amrine v. Bowersox**, 238 F.3d 1023, 1031 (8th Cir. 2001).

Petitioner first argues that trial counsel was ineffective for not objecting to the admission of Kyna's hearsay statements on the grounds that it violated Mo.Rev.Stat. § 491.075.  The appellate court found that Petitioner incorrectly read the statute to require that the out-of-court statements be made by the victim, that Kyna's statements were admissible under the first section of the statute, i.e., § 491.075.1,[6] and that any objection would have been without merit.  "Counsel is not considered ineffective for failing to make a nonmeritorious objection."  **Clark**, 16 F.3d at 963.  See also **Ford v. Norris**, 364 F.3d 916, 918-19 (8th Cir. 2004) (concluding that district court had erred by finding that trial counsel was ineffective for failing to object to prosecutor's statements; state supreme court had concluded that any objection "would probably have been overruled" and this determination was an application of state law which could not be reviewed in a federal habeas proceeding; thus, district court had essentially overruled state supreme court on a matter of state law – "which is something that it cannot do"); **Gray v. Bowersox**, 281 F.3d 749, 756 n.3 (8th Cir. 2002) (noting that a claim of ineffective assistance for failure to make an objection is not viable when the objection is without merit).

Petitioner next argues that his trial counsel was ineffective by opening the door to questions about his past criminal record by asking him if he had "ever been

---

[6]See note 3, supra.

in trouble with the law." After Petitioner answered that his only trouble with the law had been "traffic tickets," the prosecutor attempted on cross-examination to ask Petitioner about his arrest record. Petitioner's counsel objected when the prosecutor waived a stack of papers in front of Petitioner and asserted the papers were his arrest record. The objection was sustained, but a motion for a mistrial was denied. The jury was instructed to disregard the prosecutor's statements. Petitioner asserts, however, that the prosecutor's statements about his arrest record were prejudicial and could not be erased from the jury's minds. Therefore, his trial counsel was ineffective for initially asking him whether he had ever been in trouble with the law because this gave the prosecutor a potential impeachment opportunity.

Assuming, without deciding, that trial counsel was ineffective for asking Petitioner if he had ever been in trouble with the law, Petitioner nonetheless fails to establish any prejudice. Trial counsel's objection to the prosecutor's questions about an arrest record were sustained; the trial court described, in the jury's hearing, those questions as improper; the jury was instructed to disregard the prosecutor's statements. A jury is presumed to follow its instructions. <u>See</u> **<u>Jeremiah v. Kemna</u>**, 370 F.3d 806, 809 (8th Cir. 2004). The jury heard no evidence of any arrest record of Petitioner's.

<u>Grounds Five through Eight: Ineffective Assistance of Trial Counsel.</u> It is undisputed that Petitioner did not raise grounds five, six, seven, and eight, all claims of ineffective assistance of trial counsel, in his post-conviction appeal.

Respondent argues that these claims are procedurally barred. Petitioner counters that their merits should be reached to avoid a fundamental miscarriage of justice.

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Baldwin v. Reese**, 541 U.S. 27, 27 (2004); **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991).

> 'Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204 (1950)).'

**Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)). See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court.").

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for

exhaustion; there are no state remedies any longer 'available' to him." **Coleman**, 501 U.S. at 732 (alteration added).

In Missouri, the failure to renew on appeal a claim presented in a post-conviction motion causes a procedural default of the omitted claim. See **Osborne**, 411 F.3d at 919; **Anderson v. Groose**, 106 F.3d 242, 245 (8th Cir. 1997).

Consequently, the merits of Petitioner's last four grounds may not be reached "unless [Petitioner] can show cause and prejudice for the default, or actual innocence." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004) (alteration added). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added; second in original).

Petitioner argues that he has cause for his default; specifically, the abandonment of his postconviction appellate counsel. This argument attempts to avoid the well-established rule that any ineffectiveness of post-conviction counsel

is not cause for a procedural default. See **Taylor**, 329 F.3d at 971 n.13; **Burns v. Gammon**, 173 F.3d 1089, 1092 (8th Cir. 1999); **Malone v. Vasquez**, 138 F.3d 711, 719 (8th Cir. 1998). Petitioner was not abandoned by his postconviction appellate counsel. Counsel filed a thirty-page brief on two claims of error. A failure to raise the four claims now advocated by Petitioner may have been ineffectiveness, but it was not abandonment. Cf. **Mack v. Caspari** 92 F.3d 637, 639-40 (8th Cir. 1996) (noting that in Missouri a postconviction counsel's "total default" in carrying out his or her obligations constituted "abandonment").

Because Petitioner has failed to establish cause for his default, it is unnecessary to consider whether he has shown prejudice. See **Osborne**, 411 F.3d at 920; **Lee v. Kemna**, 213 F.3d 1037, 101039 (8th Cir. 2000); **Sweet v. Delo**, 125 F.3d 1144, 1151 (8th Cir. 1997).

The defaulted grounds may still be reached on their merits if Petitioner establishes that a failure to do so will result in a fundamental miscarriage of justice. See **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006); **Weaver v. Bowersox**, 438 F.3d 832, 838 (8th Cir. 2006). The fundamental miscarriage of justice exception is applicable when a petitioner makes a showing, based on new evidence, that a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" **Osborne**, 411 F.3d at 920 (quoting Murray, 477 U.S. at 496). Accord **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). The

new evidence must be "reliable evidence that was not available at trial[.]" **Nance v. Norris**, 392 F.3d 284, 291 (8th Cir. 2004) (alteration added).

Petitioner does not allege that there is new evidence of his innocence. Rather, he argues that the failure to consider the merits of his defaulted grounds will result in a fundamental miscarriage because the default is attributable to the abandonment of postconviction counsel. This argument is unavailing for the reasons set forth above.

## Conclusion

For the foregoing reasons, the state courts' resolution of Petitioner's first four § 2254 claims is not contrary to clearly established Federal Law, is not an unreasonable application of such law, and is not an unreasonable determination of the facts. Consequently, these claims are unavailing. His remaining four claims of ineffective assistance of trial counsel are procedurally barred. Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Rasheed Shabazz is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of October, 2007.